# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff/Respondent,<br><br>v.<br><br>EID ABED DAGHLAWI,<br><br>    Defendant/Petitioner. | CIVIL CASE NO.  08cv0599 J<br>CRIM CASE NO.   02cr0050 J<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Eid Abed Daghlawi, a federal prisoner appearing *pro se*, filed a Petition for Writ of Habeas Corpus ("Petition") challenging his conviction pursuant to 28 U.S.C. § 2255. [Doc. No. 749.] Respondent United States of America timely filed a Response and Opposition to the Petition. [Doc. No. 751.] Having considered these documents, this Court **DENIES** the Petition for the reasons stated below.

*Factual and Procedural Background*

**I. The Underlying Offense**

In February 2001, U.S. Drug Enforcement Administration ("DEA") agents received information from a confidential source that Petitioner was distributing large quantities of pseudoephedrine in Escondido, California. In addition to conventional investigative techniques, from May 24, 2001 to September 10, 2001, the DEA sought and received court authorization to conduct wire interceptions on three different telephone facilities used by Petitioner. The investigation culminated in the arrest of the defendants on January 10, 2002.

The investigation revealed a conspiracy to possess and distribute large quantities of pseudoephedrine knowing or having reasonable cause to believe that it would be used to manufacture methamphetamine. Petitioner was the leader of the pseudoephedrine distribution organization. He purchased bulk quantities of pseudoephedrine and supervised several couriers, who would pick up and deliver multi-kilogram quantities of pseudoephedrine.

Petitioner supervised and directed at least ten pseudoephedrine transactions, totaling approximately 132 kilograms of pseudoephedrine. [Doc. No. 751, Ex. A 3-8.] Petitioner also admitted to receiving proceeds in the amount of approximately $100,000 from the sale of pseudoephedrine. These proceeds were used to purchase a residence located at 2644 Val Dale Place in Escondido, California. *Id.* at 8.

**II. Indictment**

On January 4, 2002, a federal grand jury for the Southern District of California returned an Indictment charging Petitioner and twelve other co-defendants with various controlled substances offenses. On April 11, 2003, a Superseding Indictment was returned charging Petitioner and the other remaining defendants with the same controlled substances offenses. A criminal forfeiture allegation was added against Petitioner. The forfeiture allegation included real property located at 2644 Val Dale Place, Escondido, California, and $361,750 in United States currency.

**III. The Plea Agreement**

On May 19, 2003, Petitioner, represented by attorney Knut Johnson, signed a Plea Agreement and pled guilty to Count One of the Superseding Indictment charging him with conspiracy to distribute a List I chemical in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2. As part of the Plea Agreement, Petitioner also agreed to the criminal forfeiture allegation set forth in the Superseding Indictment and agreed to the forfeiture of $100,000 in proceeds he received from the criminal violation, pursuant to Title 21, United States Code, Section 853(a)(1). Specifically, paragraph XI.B.7 states that the Government will not recommend Acceptance of Responsibility if Petitioner "[f]ails to pay the $100,000 criminal forfeiture prior to the date scheduled for sentencing." [Doc. No. 751, Ex. A 13.] Furthermore, section XI.I of the Plea Agreement, titled "FORFEITURE," states the following:

Defendant agrees to the criminal forfeiture allegation set forth in the indictment to the extent of forfeiture of $100,000 in proceeds he received from the violation, pursuant to Title 21, United States Code, Section 853(a)(1). Defendant agrees to pay the entire $100,000 on or before the date first scheduled for the sentencing of the Defendant. The Defendant admits that he owns the real property located at 2644 Vale Dale Place, Escondido, California, as set forth in the superseding indictment. The Defendant has represented that he will refinance the existing promissory note and trust deed securing the note and pay the United States the $100,000 from the refinancing of the note and trust deed prior to the date scheduled for sentencing. The United States agrees that it will provide a release of its lis pendens recorded against the real property, upon written request from an escrow company and upon receipt of written proof from a lender of its intent to loan money to DAGHLAWI sufficient to pay the existing first trust deed and the United States.

**If the Defendant fails to timely pay the United States the $100,000 as set forth in this plea agreement, the Defendant consents to the immediate entry of an amended order of criminal forfeiture as to the entirety of the forfeitures set forth in the superseding indictment.** The Defendant understands that if he fails to timely pay the criminal forfeiture of $100,000, the Court will enter an order forfeiting the entirety of 2644 Val Dale Place, Escondido, California, to the United States, and in addition will order the forfeiture of $361,750 in United States currency, all pursuant to Title 21, United States Code, Section 853(a)(1).

Doc. No. 751, Ex. A 14-15 (emphasis in original).

In the factual basis of the Plea Agreement, Petitioner admitted that he supervised and directed at least ten pseudoephedrine transactions, totaling approximately 132 kilograms of pseudoephedrine. He also admitted to receiving proceeds in the amount of approximately $100,000 from the sale of pseudoephedrine. These proceeds were used to purchase a residence located at 2644 Val Dale Place in Escondido, California. [Doc. No. 751, Ex. A 8.]

In the Plea Agreement, Petitioner expressly certified that he had read the Plea Agreement, that he had discussed its terms with his attorney Knut Johnson, that he was satisfied with his attorney's representation, and that he fully understood its meaning and effect. [Doc. No. 751, Ex. A 16-17.] Petitioner initialed each page of the Plea Agreement and signed the last page of the agreement. *See generally* doc. no. 751, ex. A.

The Plea Agreement also advised Petitioner that his sentence was within the sole discretion of the Court and that the Plea Agreement was not binding on the court. [Doc. No. 751, Ex. A 11.] Finally, the Plea Agreement included an express waiver of Petitioner's right to appeal or to collaterally attack his conviction and sentence. The Plea Agreement specifically provides:

> In exchange for the Government's concessions in this Plea Agreement, defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order, unless the court imposes a sentence greater than the high end of the offense level recommended by the Government pursuant to this agreement at the time of sentencing. If the custodial sentence is greater than the high end of that range, defendant may appeal and the Government may support on appeal the sentence actually imposed. If defendant believes the Government's recommendation is not in accord with this agreement, defendant will object at the time of sentencing; otherwise the objection will be waived.

Doc. No. 751, Ex. A 15-16.

Under the terms of the Plea Agreement, Petitioner and the Government agreed to recommend that the base offense level for the amount of drugs involved was 38. In addition, the parties agreed to recommend a three-level departure for Acceptance of Responsibility, provided that Petitioner did not violate any of the provisions in Paragraph XI.B, including if he "fails to pay the $100,000 criminal forfeiture prior to the date scheduled for sentencing, or . . . contests the forfeitures . . . as described in this plea agreement." [Doc. No. 751, Ex. A 12-13.] Petitioner was also free to request an additional adjustment regarding his role in the offense and a two-level departure based on changes to the guidelines or listed chemical offenses from 2000 to 2001. [Doc. No. 751, Ex. A 13.]

**IV. The District Court's Acceptance of Petitioner's Guilty Plea**

On May 19, 2003, the Court accepted Petitioner's guilty plea. The Court carefully reviewed with Petitioner his rights, the Plea Agreement, and the effect of the Plea Agreement in precise detail. [Doc. No. 751, Ex. B.] The Court asked Petitioner whether he had any questions about the Plea Agreement and Petitioner replied no. [Doc. No. 751, Ex. B 5.] The Court confirmed that Petitioner had carefully read every line of the Plea Agreement before admitting that the facts were true. [Doc. No. 751, Ex. B 4-5.] The Court confirmed with Petitioner that he understood that only the trial judge could determine his sentence, and Petitioner acknowledged he understood. [Doc. No. 751, Ex. B 15.] Petitioner further confirmed before this Court that he had not received any promises or inducements to plead guilty other than those set forth in the Plea Agreement. [Doc. No. 751, Ex. B 13-14.]

This Court reviewed the Plea Agreement's waiver of appeal and collateral attack with Petitioner. [Doc. No. 751, Ex. B 16.] Petitioner represented that he understood the waiver and was prepared to waive his appellate rights pursuant to the Plea Agreement. *Id.*

**V. Cooperation Provided by Petitioner**

In exchange for Petitioner's agreement to cooperate with the United States and forfeit the property alleged in the Superseding Indictment, the United States filed two motions pursuant to USSG § 5K1.1. The first was filed on December 9, 2004 [doc. no. 645], and a supplemental motion was filed on January 3, 2005 [doc. no. 659]. In the first motion, the United States recommended a three-level departure for substantial assistance under § 5K1.1. In the supplemental § 5K1.1 motion filed on January 3, 2005, the United States recommended an additional one-level departure for substantial assistance based on additional assistance provided by Petitioner that was inadvertently omitted from the first motion.

**VI. Petitioner's Breach of the Plea Agreement**

Having worked with Petitioner since his plea in May 2003, agents stopped working with him in approximately March 2004. The cooperation ended due to Petitioner's failure to forfeit the agreed-upon property, which constituted a breach of the Plea Agreement. The Plea Agreement clearly established that Petitioner was required to pay $100,000 to the Government "on or before the date first scheduled for sentencing." If he failed to meet this condition, Petitioner had agreed

to entry of an amended order forfeiting the property and money identified in the Superseding Indictment. Petitioner failed to pay the $100,000 by the deadline.

Additionally, Petitioner engaged in a variety of additional conduct that breached the terms of the Plea Agreement. [Doc. No. 645.] First, the real property that was the Petitioner's primary residence was titled by him in his brother, Mazin Daghlawi's name. [Doc. No. 645 4-5.] In addition, unbeknownst to the district court or the United States, Petitioner transferred title to the property to a third party on April 10, 2003, one and one-half months prior to the plea hearing, to defeat its seizure by the United States. *Id.* However, on May 26, 2003, at his plea hearing before the district court, Petitioner represented that the residence belonged to him. *Id.* Petitioner did not inform the United States during the plea negotiations that he had transferred title to the real property to a third party. *Id.* Likewise, Petitioner did not disclose to the district court at the time of his plea that he had transferred title to Mahmoud Saleh Akel ("Akel") five weeks earlier. *Id.*

Second, Petitioner forged his brother Mazin Daghlawi's signature to the deed transferring title from his brother Mazin Daghlawi to Akel. *Id.* The United States discovered the forgery in early 2004 when a notary public confirmed that the defendant, not Mazin Daghlawi, signed the deed and signed the notary book. *Id.* at 4. The Court heard Petitioner testify and admit that he signed Mazin Daghlawi's name to the deed and recorded it. *Id.*

Third, in August 2003, after the plea and after the recording of the lis pendens, Petitioner participated in a loan scheme with Akel for the refinancing of the property. *Id.* Akel and Petitioner submitted an application to a lender, representing that Akel owned the property and that it was his primary residence, all the while knowing full well that Petitioner was the occupant of the property. *Id.*

On November 18 and 19, 2004, the Court heard both Petitioner and Akel testify about the scheme to defraud the lender under the guise of refinancing the loan. *Id.* at 4-5. Through this transaction Petitioner diluted the value of the property for the United States by increasing the amount of the loan from approximately $502,000 to approximately $650,000. *Id.* Petitioner testified about receiving $54,000 directly from the refinancing process. *Id.*

Finally, Petitioner violated the terms of the Plea Agreement by contesting the forfeiture of real property. *Id.* at 5.

**VII. Sentencing**

On August 13, 2003, the Probation Department filed a PSR, recommending a three-level reduction for acceptance of responsibility under USSG § 3El.l(a). On November 17, 2004, the Government filed a sentencing summary chart that recommended a two-level downward adjustment for acceptance of responsibility, even though the Government was not obligated to do so given that Petitioner had violated the terms of the Plea Agreement. [Doc. No. 751, Ex. C.] Petitioner's adjusted offense level of 34 and a criminal history category of III resulted in a sentencing guideline range of 188 to 235 months. [Doc. No. 751, Ex. D 3-4.]

On September 28, 2005, the Court sentenced Petitioner to 188 months in custody, five years of supervised release, and a $100 penalty assessment. [Doc. No. 751, Ex. D 11-12.] The Court's calculation of the guidelines adopted the recommendations of the parties and found a base offense level of 38 under USSG § 2D1.11, with a two-level upward adjustment for aggravated role in the offense under USSG § 3B1.1. *Id.* at 3-4, 9-12. The Court granted a two-level reduction for acceptance of responsibility. *Id.* at 10. The Court also granted the Government's downward departure motion of four points pursuant to USSG § 5Kl.l. *Id.*

**VIII. Petitioner's Section 2255 Habeas Petition**

Petitioner moves to vacate, set aside, or correct his sentence pursuant to Section 2255. Petitioner alleges four grounds for relief including: (1) Petitioner's guilty plea was unknowing and "unvoluntary;" (2) he received ineffective assistance of counsel; (3) he received ineffective Sentencing Counsel; and (4) he was denied effective appellate counsel and "cheated by counsel of funds." [Doc. No. 749.]

Respondent argues that the Court should deny the Petition because Petitioner's claims are time-barred, barred by the written plea agreement he entered into, and without merit. [Doc. No. 751.]

*Legal Standard*

"A prisoner in custody under sentence of a court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or that the sentence was in excess of the maximum authorized by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

*Analysis*

**I. Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year statute of limitations for federal prisoners to collaterally attack their sentences. Section 2255(1) provides: "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of - (1) the date on which the judgment of conviction becomes final . . . ." 28 U.S.C. § 2255.

If the movant pursues a direct appeal to the Court of Appeals but does not file a petition for writ of certiorari with the United States Supreme Court, the conviction becomes final, triggering the beginning of the statute of limitations, when the time for filing such a petition elapses. *See Clay v. United States*, 537 U.S. 522, 532 (2003); *United States v. Garcia*, 210 F.3d 1058, 1060 (9th Cir. 2000). Certiorari petitions are timely when filed within ninety days after the lower court's entry of judgment. *See* SUP. CT. R. 13 ("[A] petition for writ of certiorari to review a judgment in any case, civil or criminal, entered by a . . . court of appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.").

The Court **FINDS** that the Petition is not time-barred. The Court entered judgment in Petitioner's criminal proceeding on October 6, 2005. [Doc. No. 713.] Petitioner timely filed an appeal to the Ninth Circuit [doc. no. 714], and the Ninth Circuit dismissed Petitioner's appeal on January 16, 2007 [doc. no. 738]. Petitioner did not file a petition for writ of certiorari with the Supreme Court, and his opportunity to do so expired on April 16, 2007, ninety days after the Ninth Circuit's entry of judgment. Petitioner therefore had one year, beginning on April 16, 2007, to file his petition for writ of habeas corpus. Petitioner filed his Petition on April 1, 2008. [Doc. No. 749.] The Court **FINDS** that the Petition is not time-barred.

**II. Waiver**

The Court **FINDS** that Petitioner waived his right to collaterally attack his sentence as part of his Plea Agreement. The Ninth Circuit has upheld the validity of waivers of appeal and determined that "public policy strongly supports plea agreements." *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990). Negotiating such waivers is a proper and sensible part of the plea bargaining process and helps ensure the important benefit of finality. *See Navarro-*

- 8 -                                      08cv0599 J/02cr0050J

*Botello*, 912 F.2d at 322. Courts will generally enforce a defendant's waiver of his right to appeal if (1) the waiver is knowingly and voluntarily made and (2) the language of the waiver encompasses the defendant's right to appeal on the grounds claimed on appeal. *See United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000).

**A. Waiver Is Knowingly and Voluntarily Made**

An express waiver of the right to appeal in a negotiated plea agreement is valid if knowingly and voluntarily made. *See United States v. DeSantiago-Martinez*, 38 F.3d 394, 395 (9th Cir. 1992). A reviewing court looks to the totality of the circumstances that surround the signing and entry of the plea agreement to determine whether a defendant agreed to its terms knowingly and voluntarily. *See United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005); *United States v. Baramdvka*, 95 F.3d 840, 843 (9th Cir. 1996). "The district court's extensive Rule 11 colloquy with [defendant] shows that [defendant's] plea was knowingly and voluntarily made." *Jeronimo*, 398 F.3d at 1154. A knowing and voluntary plea occurs when the district court informs the defendant of his appellate rights and verifies his intent to forfeit them. *See United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000). "In assessing the voluntariness of the plea, statements made by a criminal defendant contemporaneously with his plea should be accorded great weight." *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986). Declarations made by a defendant in open court "carry a strong presumption of verity." *Id.*

Petitioner argues that his plea was not knowingly and voluntarily made. He notes that he signed two plea agreements: one farther in advance of the May 19, 2003 hearing, and one Mr. Johnson presented to him minutes before the May 19, 2003 hearing. Petitioner argues that his plea was "unknowing and unvoluntary" because he did not receive a copy of the agreement, was not permitted to read the agreement, and signed the Plea Agreement only because he was relying on Mr. Johnson's legal advice. [Doc. No. 749.] However, there are only three minor differences between the original plea agreement and the Plea Agreement Petitioner entered on May 19, 2003,

none of which are material to this petition.[1]  The Court **FINDS** that these circumstances fail to indicate that Petitioner's plea was not knowingly and voluntarily made.

Here, Petitioner entered into a written Plea Agreement with the advice and consent of his attorney.  [Doc. No. 751, Ex. A.]  In that Plea Agreement, Petitioner represented that the plea was knowing and voluntary [doc. no. 751, ex. A 10], that he fully understood the agreement [doc. no. 751, ex. A 17], and that he was satisfied with the representation of his attorney [doc. no. 751, ex. A 17].  Furthermore, Petitioner's sworn representations in response to this Court's careful and detailed questioning at the Rule 11 colloquy conclusively refute Petitioner's assertion that he did not knowingly and voluntarily enter into the plea agreement.  [Doc. No. 751, Ex. B.]  The Court **FINDS** that Petitioner's waiver was knowingly and voluntarily made.

**B. Language of the Waiver Encompasses the Petitioner's Right to Appeal**

A plea agreement is contractual in nature and is measured by contractual standards.  *See United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000).  Contract principles are applied to determine whether the parties reasonably understood the terms of the agreement as waiving the defendant's right to collateral attack or appeal.  *See United States v. Torres*, 999 F.2d 376, 378 (9th Cir. 1991); *Nunez*, 223 F.3d at 958.  In applying those principles, "the terms of the agreement, if disputed, are to be determined by objective standards."  *United States v. Gerace*, 997 F.2d 1293, 1294 (9th Cir. 1993) (citations omitted).  The terms of the plea agreement can be objectively determined by reference to the plain language of the plea agreement.  *See United States v. Goroza*. 941 F.2d 905, 909-10 (9th Cir. 1991).

---

[1] In the May 19, 2003, plea, *see* doc. no. 749, on page 6, paragraph 18, lines 23-25 were added stating, "At the time that MOHAMMAD ABED DAGHLAWI received the money he knew it was proceeds from the distribution of pseudoephedrine."  Mohammad Abed Daghlawi was a co-defendant of Petitioner, and this statement pertaining to Mohammad's knowledge does not bear on the voluntariness of Petitioner's plea.  The second difference is on page 7, paragraph 23, line 24, which deleted the name Jubran Zalan Dighlawi from the earlier plea.  This was a typographical correction.  The third difference is on page 14, line 22, where a subheading "I. FORFEITURE" was added; another typographical error.  In all other respects the plea agreements are identical.

In this case, based on the clear language of the Plea Agreement, the Government and Petitioner both contemplated that Petitioner would not file any collateral attacks on his conviction and sentence if the Court imposed a sentence less than the high end of the guideline range recommended by the Government. Here the high end of the range was 235 months. Petitioner was only sentenced to 188 months. It cannot be disputed that the "bargained-for quid pro quo" of the written agreement, as understood by the parties, would be Petitioner's unassailed sentence and conviction once the Court ordered a sentence of less than 235 months in custody. *See United States v. Escamilla*, 975 F.2d 568, 571 (9th Cir. 1992). The Court **FINDS** that the language of the waiver encompasses Petitioner's right to appeal.

Petitioner's waiver of his right to collaterally attack his conviction and sentence in the Plea Agreement was knowingly and voluntarily made, and his arguments as to the invalidity of the Plea Agreement are unpersuasive. The Court **FINDS** that Petitioner waived his right to collaterally attack his conviction or sentence.

Because the Court **FINDS** that Petitioner validly waived his right to collaterally attack his conviction, the Court does not reach the merits of his Petition. *See United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999).

*Conclusion*

For the reasons above, the court **DENIES** Petitioner's Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255.

**IT IS SO ORDERED.**

DATED: April 17, 2009

HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties of Record